IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| RANDY MARION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:13-cv-165 (MTT) (CHW) |
| | : | |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Randy Marion's application for benefits. In accordance with the analysis below, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

Plaintiff, who was born in November 1966, filed an application for Title II and Title XVI benefits in November 2009, alleging an initial onset date of August 15, 2009. (Pl.'s Br., Doc. 14, p. 2). Plaintiff quit his last job performing construction work for a temporary agency in June 2009 due to daily pain in his back, knees and right shoulder. (R. 42-43, 56-57). Plaintiff also claims to suffer from diabetes and hypertension which, in the past, have caused him dizziness and weakness. (R. 45). Plaintiff indicated at his administrative hearing, though, that his diabetes and hypertension are controllable with medication. (R. 57).

Plaintiff's applications were denied initially and on reconsideration, (R. 80-83), and the reviewing administrative law judge ("ALJ") issued an unfavorable opinion on March 8, 2012. (R. 20-30). Plaintiff then sought review before the Appeals Council, which denied Plaintiff's

1

request for review on March 12, 2013. (R. 1-4). Plaintiff now seeks review before this Court pursuant to "sentence four" of 42 U.S.C. § 405(g). *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007).

## STANDARD OF REVIEW

District courts have a limited role in reviewing claims brought under the Social Security Act. Review of the Commissioner's decision is restricted to a determination of whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Consequently, a court's role in reviewing claims brought under the Social Security Act is quite narrow.

District courts must defer to the Commissioner's factual findings. Courts may not decide facts, re-weigh evidence, nor substitute their judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). *See also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). Courts must scrutinize the entire administrative record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. *Id.*

The Commissioner's findings of law are given less deference. Courts must determine if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). Courts must therefore consider any questions of law *de novo*, and "no . . . presumption of validity attaches to the [Commissioner's] conclusions of law, including determinations of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). The Commissioner's failure to apply the correct legal standards or to provide a sufficient factual basis for the court to determine that the correct legal standards have been followed is grounds for reversal. *Id.*

## EVALUATION OF DISABILITY

Persons are "disabled" for the purposes of receiving benefits under the Social Security Act if they are unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

When evaluating a claimant's disability, the Commissioner follows a five-step "sequential evaluation procedure." 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner determines whether the claimant currently engages in substantial gainful activity. At step two, the Commissioner considers the medical severity of the claimant's impairments. Next, at step three, the Commissioner determines whether the severity of the claimant's impairments (i) meet or equal the severity of one or more of the impairments specified in the listing of impairments; and (ii) meet the duration requirement. If so, the sequential evaluation procedure stops and the claimant is declared "disabled." If not, the Commissioner assesses the claimant's residual functional capacity, ("RFC"), which is defined as "the most you can still do

despite your limitations." 20 C.F.R. § 404.1545(a)(1). The Commissioner then proceeds to step four where, based on her RFC assessment, she evaluates the claimant's ability to return to past relevant work despite his or her medically-determinable impairments. Finally, at step five, the Commissioner determines whether there are a sufficient number of jobs in the national economy that the claimant can perform in light of his or her RFC, age, education, and work experience.

## ANALYSIS

The Commissioner's decision should be affirmed because it is based on proper legal standards and supported by substantial evidence. Plaintiff argues that the ALJ improperly discounted the opinion of Dr. Kent Ford, but the record shows that the ALJ adequately articulated "good cause" to discount Dr. Ford's opinion. Furthermore, because the ALJ properly discounted Dr. Ford's opinion, the ALJ did not need to account for the limitations proposed by Dr. Ford when assessing Plaintiff's RFC. Because the grounds raised by Plaintiff are not persuasive, and because the Commissioner's decision as a whole is based on substantial evidence, it is recommended that the Court affirm.

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation procedure, the reviewing ALJ made the following determinations in Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since at least August 15, 2009, his alleged onset date. (R. 22). At step two, the ALJ found that Plaintiff had the following severe combination of impairments: "degenerative joint disease of the right knee and right shoulder, degenerative disc disease of the lumbar spine, hypertension, diabetes mellitus, renal insufficiency syndrome, and anemia." (*Id.*). At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22-23).

Therefore, the ALJ assessed Plaintiff's RFC and found that Plaintiff could perform "light work," with certain exceptions. (R. 23-28). Specifically, the ALJ determined that Plaintiff required an option to sit or stand at 30 minute intervals at his own discretion; that he could perform only occasional reaching with the right upper extremity, but not above the shoulder; that he could perform only occasional kneeling, crawling and climbing of ramps and stairs; that he should not climb ladders, ropes or scaffolds; and that he should avoid concentrated exposure to extreme cold and work hazards. (R. 23). Based on this RFC finding, the ALJ found, at step four, that Plaintiff was unable to perform any of his past relevant work. (R. 28-29). At step five, however, the ALJ determined that Plaintiff could make an adjustment to other work existing in significant numbers in the national economy. (R. 29-30). In particular, the ALJ determined that Plaintiff could work as a "school bus monitor," "gate guard," or "greeter." (*Id.*). Accordingly, the ALJ determined that Plaintiff was "not disabled" within the meaning of the Social Security Act. (R. 30).

## DR. KENT FORD'S QUESTIONNAIRE

Plaintiff bases his arguments to this Court on the findings of Dr. Kent Ford, who completed a "Physical Residual Functional Capacity Questionnaire" on January 9, 2012, (R. 646-50), and found that Plaintiff:

- could walk only 1 block;
- could sit for only 5 minutes at a time;
- could stand for only 1 hour at a time;
- could sit and stand for only two hours each, in total, during an eight-hour workday;
- needed the option to shift, at will, from sitting to standing or walking;

- could never lift or carry weights of ten pounds or greater;
- needed to take one-hour breaks every ten to fifteen minutes; and
- would likely miss more than four days of work each month.

(R. 646-50)

In assigning "no weight" to Dr. Ford's questionnaire, the ALJ noted that Dr. Ford first saw Plaintiff on December 29, 2011, less than a month before completing the questionnaire. (R. 26). *See* 20 C.F.R. § 404.1527(c)(2)(i); § 416.927(c)(2)(i) (discussing the importance of length and frequency of a treatment relationship). The ALJ also noted that Dr. Ford's opinion was "not well supported by medically acceptable clinical and laboratory diagnostic techniques," and that Dr. Ford "appear[ed] to have relied *entirely* on claimant's subjective allegations." (R. 28) (emphasis added).

Although treating-source opinions like Dr. Ford's questionnaire are ordinarily given "substantial or considerable weight," they may be discounted upon a showing of "good cause . . . to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Such "good cause" exists when (1) the treating source's opinion is "not bolstered by the evidence;" when (2) the evidence supports a contrary finding; or when (3) the treating source's opinion is conclusory or inconsistent with the source's own records. *Id.*

In this case, the ALJ determined that none of the objective medical evidence in the record supported the drastic functional limitations proposed by Dr. Ford.[1] *See* SSR 96-2p,[2] 1996 WL 374188 at *1 ("Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic

---

[1] Indeed, Plaintiff did not, himself, identify objective medical evidence supporting Dr. Ford's proposed limitations.

[2] "Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions." 1996 WL 374188.

techniques"). Substantial evidence supports this determination. As noted by the ALJ, (R. 24-25), records from the Sandersville Community Health Care Center—where Dr. Ford, among others, treated Plaintiff—show the following findings:

- On February 10, 2009, Plaintiff had "no complaints," was compliant with his medication, and reported no side effects. (R. 394-95).

- On April 15, 2009, Plaintiff again had "no complaints." (R. 392). It was noted that Plaintiff had not taken his medication, and he was instructed to do so. (*Id.*).

- On June 11, 2009, Plaintiff denied pain and requested a refill of his prescribed medication. (R. 390-91).

- On July 15, 2009, Plaintiff again had "no complaints." (R. 388).

- On October 28, 2009, Plaintiff complained of non-radiating lower back pain and was prescribed Tylenol. (R. 386-87).

- On February 2, 2010, Plaintiff did not complaint of back pain, but rather of pain in his right shoulder. (R. 383-85). Plaintiff was prescribed Celebrex and Flexeril, and was instructed to "[c]all if no improvement or any worsening." (R. 383).

- On May 3, 2010, Plaintiff again had "no complaints." (R. 466-67).

- On August 4, 2010, Plaintiff's had a pain scale of 0. (R. 463).

- On January 13, 2011, Plaintiff denied pain. (R. 609).

- On February 23, 2011, Plaintiff reported "occasional low back discomfort," but Plaintiff again had a pain scale of 0. (R. 612-13). Plaintiff was prescribed Flexeril and Ultram. (*Id.*).

- On April 22, 2011, Plaintiff denied pain. (R. 615).

- On May 20, 2011, Plaintiff denied pain. (R. 618).

- On July 27, 2011, Plaintiff reported a pain scale of "6." (R. 620). No change was made, however, to Plaintiff's list of prescribed pain medications.

- On October 3, 2011, Plaintiff denied pain. (R. 622).

- On December 5, 2011, Plaintiff "report[ed] feeling good." (R. 628).

- On December 29, 2011, Plaintiff denied pain. (R. 673).

- On January 9, 2012, the same month Dr. Ford completed his questionnaire, Plaintiff reported a pain scale of 8, but it was noted that there was "no evidence of pain," and that Plaintiff "[did] not appear to be giving full effort." (R. 670-72).

- On February 8, February 13 and February 22, 2012, Plaintiff reported a pain scale of 0. (R. 663, 665, 661).

- On March 15, 2012, Plaintiff reported an intermittent discomfort rate of "6," and was prescribed Ultram. (R. 658-60).

- On May 1, 2012, Plaintiff again reported lower back discomfort that was "present x 2 month." (R. 654). Plaintiff was taken off of Ultram due to proteinuria, and was instead instructed to take Tylenol and Codeine no. 3. (R. 656).

Other records also support less drastic functional limitations than those proposed by Dr. Ford. On May 5, 2010, for example, Dr. Rashmi Hooda determined that Plaintiff had only some mild range-of-motion limitations in his right shoulder, back and right knee.[3] (R. 443-51). Similarly, on June 1, 2010, Dr. Ramona Minnis determined that Plaintiff could sit and stand/walk for six hours each, in total, during an eight-hour workday. (R. 456). Dr. Minnis also determined that Plaintiff could occasionally lift 50 pounds and could frequently lift 25 pounds. (*Id.*).

As indicated by the ALJ, none of above-listed records, nor indeed any of the objective medical evidence in the record, supports Dr. Ford's limitations. As a result, the ALJ properly

---

[3] Plaintiff argued, in one sentence, that the ALJ failed to explain the conflict between Plaintiff's RFC and the findings of Dr. Rashmi Hooda, a consultative examiner who noted that Plaintiff had right shoulder limitations. (Pl.'s Br., Doc. 14, p. 9; R. 442-51). Contrary to Plaintiff's argument, the ALJ adequately assessed Dr. Hooda's findings, (R. 24-25), and accurately determined that "Dr. Hooda concluded that . . . the claimant [would] have [only] mild limitations in his functioning." (R. 27). Nothing in Plaintiff's underdeveloped argument suggests an error in the ALJ's reasoning, particularly since the ALJ's RFC finding expressly limits Plaintiff to only "occasional reaching with the right upper extremity, but not above the shoulder." (R. 23).

discounted Dr. Ford's questionnaire, and therefore did not need to explain the conflicts between the questionnaire and her RFC findings. Accordingly, because neither of Plaintiff's arguments provides a basis upon which to alter the decision below, it is recommended that the Court affirm.

## CONCLUSION

After careful consideration of the record, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 10th day of June, 2014.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge